## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2016, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Casey Dale Redman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 9, 2016

Court of Appeals Case No.
48A05-1511-CR-1896

Appeal from the
Madison Circuit Court

The Honorable
Angela Warner Sims, Judge

Trial Court Cause No.
48C01-0910-FB-555

**Kirsch, Judge.**

[1] Casey Dale Redman ("Redman") appeals the trial court's revocation of his probation, raising one issue that we restate as: whether the trial court abused its

discretion by ordering Redman to serve two years of the previously-suspended four-year portion of his sentence.

[2]     We affirm.

## Facts and Procedural History

[3]     In October 2009, the State charged Redman with five counts of Class B felony child molesting for engaging in intercourse with a child under the age of fourteen years of age. On February 8, 2010, Redman pleaded guilty to the five charges. The plea agreement provided a cap of ten years on executed time, and the State agreed to recommend "six years executed with probation for the balance." *Appellant's App*. at 50.

[4]     The trial court sentenced Redman to fourteen years of incarceration on each of the five convictions, with ten years executed in the Indiana Department of Correction ("DOC") and four years suspended to supervised probation. *Id*. at 56-57. The trial court ordered the sentences to be served concurrently. In addition, the trial court imposed special sex offender conditions, as well as the standard conditions of probation. One condition of Redman's probation required him to attend, actively participate in, and successfully complete a court-approved sex offender treatment program as directed by the trial court. *Id*. at 54; *State's Ex.* 1. Redman also was required to maintain steady progress toward all treatment goals as determined by the treatment provider, and unsuccessful completion or non-compliance would be a violation of the terms and conditions of his probation. *Id*.

[5] Redman completed the executed portion of his sentence and was released to probation on May 12, 2014. *Id*. at 70. On September 19, 2014, the State filed a Notice of Probation Violation ("Notice No. 1"). The State alleged that Redman failed to comply with sex offender treatment, failed to pay court costs, failed to pay probation fees, failed to pay an administrative fee, failed to maintain employment and verify employment to the probation department, and failed to pay a sexual assault fee. *Id*. at 71. On November 3, 2014, the trial court dismissed Notice No. 1.

[6] On February 4, 2015, the State filed another Notice of Probation Violation ("Notice No. 2"), alleging that Redman violated the conditions of his probation by failing to pay costs and fees, failing to pay for a urine drug screen, failing to maintain or verify employment, and failing to complete the sex offender treatment program. *Id*. at 81. On March 30, following a hearing on Notice No. 2, the trial court deferred sanctions, but thereafter issued an order on May 18, 2015, finding that Redman was in "substantial compliance," and it imposed no sanctions. *Id*. at 100.

[7] On August 7, 2015, the State filed a third Notice of Probation Violation ("Notice No. 3"), alleging that Redman failed to comply with and complete treatment recommendations, failed to pay probation fees, failed to pay a urine screen fee, and failed to maintain employment and provide verification of employment. *Id*. at 101. At a September hearing on Notice No. 3, Redman admitted to the allegations that he failed to pay probation and urine drug screen fees and failed to maintain and verify employment, but he denied that he failed

to complete the required sex offender treatment. Because the probation department had just recently received information from the sex offender treatment program, which Redman's counsel had not yet had an opportunity to review, the trial court continued the hearing, but in closing, it reminded Redman:

> [Y]ou've been in front of me now several different times. It always seems to be an issue that we have a job on the horizon or we're going to an orientation or we've got something lined up. And for one reason or another, none of those really have seemed to pan out. When I see you [at the next scheduled hearing], if you have employment, it's no longer acceptable . . . for your attorney just to tell me that you have employment. You [] need to show me some type of verification that you are, in fact employed.

*Tr.* at 87-88.

[8]     At the continued hearing on Notice No. 3, Redman provided a faxed letter from his shift supervisor indicating he was employed. Redman admitted that he failed to pay probation fees, failed to pay the urine screen fee, and failed to maintain or verify employment to the probation department. *Id.* at 95. However, Redman denied that he did not complete the sex offender treatment program. The State thereafter presented evidence that Redman underwent an evaluation at the sex offender treatment program, began treatment in May 2014, and his therapist, licensed clinical social worker Donald Allbaugh ("Allbaugh"), recommended outpatient sex offender treatment once a week until all assignments were completed. Allbaugh testified that, "from the

beginning, Mr. Redman was [] very uncooperative with treatment," noting that on several occasions personnel from the treatment program had to meet with Redman and his probation officer "to reinforce treatment recommendations," which he said is "unusual" or "rare." *Tr*. at 102. Redman failed to schedule or submit to polygraph tests every six months as required, and when he did schedule one after eight months, he failed to bring payment for the test with him as he had been instructed to do. Redman was terminated from the program at that time, but was thereafter permitted back into the treatment program under a "zero tolerance" policy, "meaning that if there were any further [] failure[s] on his part to comply with [] the treatment requirements, [] he would be terminated from treatment." *Id*. at 104.

[9] According to Allbaugh, Redman completed only one of ten written treatment assignments after having been in the program for approximately one year, which Allbaugh characterized as "poor compliance." *Id*. Allbaugh recommended that Redman attend sessions twice per week to provide him additional input from other offenders in the treatment group, so that Redman might better understand what the assignments required. While Redman did attend twice per week "for a period of time," Redman at some point contacted Allbaugh advising that he could not attend a session because he would be at the hospital with his mother. *Id*. at 105. Allbaugh told Redman that he would be excused if he brought written verification. Redman never produced the required verification, and never completed remaining assignments. In September 2015, Redman was again terminated form the sex offender treatment

program. Probation Officer Carl Chambers ("Chambers") summarized, "[I]t's been non-consistent, non-compliance with this Defendant." *Id*. at 98. The State requested that the entirety of Redman's four-year suspended sentence be revoked.

[10] Redman testified he had obtained employment and presented a faxed letter from his shift manager. With regard to the sex offender treatment program, Redman testified that, initially, he did not have the funds to pay for the polygraph test. He also testified that his lack of completion of the written assignments was not due to lack of effort, explaining that he wrote several drafts of the first assignment before it was accepted as being adequate, and he attempted the second assignment, but it was not deemed satisfactory. Redman asked the trial court to continue his placement on probation, asserting that he had made substantial progress and was in substantial compliance with treatment requirements and had secured employment.

[11] The trial court acknowledged that Redman in the last several weeks had made efforts to comply with probation and recognized that some of the failures to comply were due to monetary reasons, but found that from the beginning of probation Redman was not motivated to comply with the required conditions and only made the recent efforts under the threat of losing his liberty; the trial court deemed it to be "too little, too late." *Tr*. at 168. The trial court determined that Redman failed to successfully complete his sex offender treatment, and he failed to maintain and verify employment, both conditions of his probation. The trial court revoked two years of the previously-suspended

four-year portion of his sentence, ordering that the two years be served at the DOC, after which Redman would return to probation. *Appellant's App*. at 112-13. Redman now appeals.

## Discussion and Decision

Redman does not assert that he did not violate probation or that the trial court did not follow the proper procedures when it revoked his probation. Rather, Redman's challenge is to the sanction imposed, claiming it was too severe and constituted an abuse of discretion. Probation is a conditional liberty that is a privilege, not a right. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013); *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition of probation actually occurred. *Heaton*, 984 N.E.2d at 616. Second, if a violation is found, then the trial court must determine the appropriate sanctions for the violation. *Id*. We review a trial court's decision to revoke probation and a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion. *Id*.; *Abernathy v. State*, 852 N.E.2d 1016, 1020 (Ind. Ct. App. 2006). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court or when the trial court misinterprets the law. *Heaton*, 984 N.E.2d at 616.

Upon finding that a probationer has violated a condition of probation, a court may continue him on probation, with or without modifying or enlarging the

conditions, extend his probation for not more than one year beyond the original probationary period, or order execution of the initial sentence that was suspended. Ind. Code § 35-38-2-3(g). The imposition of an entire suspended sentence is well within the trial court's discretion. *Sandlin v. State*, 823 N.E.2d 1197, 1198 (Ind. 2005); *Sanders v. State*, 825 N.E.2d 952, 957-58 (Ind. Ct. App. 2005), *trans. denied*. Accordingly, when the trial court in the present case ordered Redman to serve two of the four previously-suspended years for violating his probation, it was acting within its statutory authority.

[14] Redman urges that his violations "were largely technical in nature" and did not warrant revocation and incarceration in the DOC. *Appellant's Br*. at 6. He argues that the trial court "chose the strictest sanction of revoking a part of his suspended sentence and ordering it be executed in the DOC," but that "the more appropriate sanction" would have been to extend his probation, place him on in-home detention, or allow him to serve his sentence in work release. *Id*. at 7. We disagree that his violations were technical in nature. Redman was aware that upon release he needed to abide by the terms of his probation, which included submitting to polygraph tests every six months, and he was advised of the fees associated with those tests, yet he failed to properly plan and save for those tests. He also was required to obtain employment and provide verification of it to the probation department, although there is no indication that Redman was employed until shortly before the last evidentiary hearing on Notice No. 3, in October 2015. With regard to the required written assignments in the sex offender treatment program, Allbaugh testified that

"diligent" participants can complete all ten assignments in a year and "most" complete them within eighteen months; Redman completed one in approximately a year. *Tr.* at 113. Allbaugh testified that Redman was "very uncooperative with treatment," and Chambers described Redman as "non-consistent" with treatment. *Id.* at 98, 102. From the evidence presented, the trial court perceived that Redman simply was not motivated until Redman sensed his "feet on the fire" and a possible return to incarceration. *Id.* at 166. Redman has failed to establish that the trial court's decision to revoke his probation and order him to serve two years of a previously-suspended four-year sentence was an abuse of discretion.

Affirmed.

Najam, J., concurs.
Riley, J., concurs in result without opinion.